# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF TEXAS
# WACO DIVISION

| | |
|---|---|
| IN RE: § | |
| § | |
| BPRE, LP, § | |
| Debtor. § | |
| § | |
| § | |
| BPRE, LP, § | |
| Appellant, § | |
| § | |
| v. § | CIVIL ACTION NO. W-12-CA-227 |
| § | BK: 09-61289 |
| RML WAXAHACHIE DODGE, LLC, § | ADV: 09-6032 |
| RML-MCLARTY-LANDERS § | |
| AUTOMOTIVE HOLDINGS, LLC, § | |
| RML WAXAHACHIE FORD, LLC, § | |
| RML WAXAHACHIE GMC, LLC, § | |
| RLJ-MCLARTY-LANDERS § | |
| AUTOMOTIVE GROUP, § | |
| Appellees. § | |

## MEMORANDUM OPINION AND ORDER

In a previous appeal, Cause Number W-10-CA-267, the undersigned affirmed the Judgment of the Bankruptcy Court which held in favor of Appellees. However, because the Bankruptcy Court neglected to address Appellant's claims based upon fraudulent inducement and fraud by nondisclosure, the case was remanded. The Bankruptcy Court has now issued an opinion which finds no evidence to support Appellant's claims. Appellant again appeals the Bankruptcy Court's judgment, as well as the Order denying its Motion to Alter or Amend Judgment. Having reviewed

the briefs of the parties and the record in this case, the Court is persuaded the Bankruptcy Court's decision should be affirmed.

## I. BACKGROUND

From the Memorandum of Opinion entered by Bankruptcy Judge John C. Akard (and from this Court's prior Order affirming the Bankruptcy Court's opinion), the following are the pertinent undisputed facts in this case:

> Plaintiff BPRE, LP ("BPRE") is owned by Larry Scott Bossier ("Bossier") and Randy Pretzer ("Pretzer"), and is a real estate partnership which owned property in Waxahachie, Texas and Fairfield, Texas upon which automobile dealerships were located – BP Automotive LP ("BP Automotive") in Waxahachie and Bossier Country in Fairfield. Bossier and Pretzer also owned BP Automotive and Bossier Country, both of which were Chrysler and Dodge dealerships. Both dealerships were covered by a lien totaling approximately $5.7 million, payable at $40,500 per month.
>
> BP Automotive was not doing well financially, and the partners decided to sell the dealership in 2008. Pretzer contacted several potential purchasers, including Defendant RLJ-McLarty-Landers Automotive Holdings LLC ("RLJ Holdings"). RLJ Holdings had acquired dealerships for other brands located physically on either side of BP Automotive. Pretzer, as Manager of Bossier Chrysler Dodge, and Steve Landers ("Landers"), President, on behalf of RLJ Holdings, entered into a letter of intent on March 6, 2009 for RLJ Holdings to purchase the assets and business of BP Automotive.
>
> On March 20, 2009, RMLW-Dodge, through Landers, and Bossier Chrysler Dodge, through Pretzer as Manager, and Pretzer individually as "Stockholder," entered into an Asset Purchase Agreement ("the APA"). One section of the APA provided that Pretzer and RMLW-Dodge would enter into a lease for the land and improvements in the form attached as Exhibit 1.4(iv) ("the Lease). The APA further provided that the "Stockholder" (Pretzer) owned "100% of the entity that owns the Real Property described in the Lease in fee simple, free and clear of all liens, claims and encumbrances, except as set forth in Schedule 3.2." However, BPRE which owned the real estate was in turn owned by Pretzer and Bossier, and there was a

2

substantial lien on the property. (The Schedule 3.2 was not attached to the APA which BPRE introduced as Exhibit 176.)

The Lease referred to in the APA ("the March Lease"), was introduced as BPRE's Exhibit 174. The signatures on the lease are those of Bossier, as Manager of BPRE, and Landers for RMLW-Dodge. The date of the lease is blank. The description of the property involved dealt with real property located in Ellis County, Texas, and was described in "Exhibit A", which was not attached to the March Lease. The March Lease provided that the term of the lease "shall commence on the date hereof," and that the rent was to be $26,000 per month.

Prior to the finalization of the APA agreement, Chrysler Motors LLC ("Old Chrysler") filed for bankruptcy in New York. The day after the bankruptcy, BP Automotive closed the doors on the Waxahachie dealership. While Pretzer continued to come to a new agreement with RMLW-Dodge regarding the Waxahachie property, nothing was finalized because of Old Chrysler's bankruptcy. Old Chrysler sent notices to its dealerships in mid-May 2009 rejecting over 700 franchise agreements, including the one with BP Automotive. BP Automotive did not challenge the rejection of its franchise agreement or seek arbitration. As a result, BP Automotive could not further negotiate any type of APA agreement. The only agreement that could be finalized was a lease of BPRE's property and buildings.

In May and June 2009, Pretzer continued to attempt to finalize a lease with RMLW-Dodge. Following approval by the Bankruptcy Court, the automotive assets of Chrysler Motors LLC ("Old Chrysler") were sold to Chrysler Group LLC ("New Chrysler") on June 10, 2009. However, New Chrysler was not licensed to do business in Texas, which was required before RMLW-Dodge could obtain approval to operate from the Texas Motor Vehicle Commission ("TMVC"). They entered in another lease on July 20, 2009 ("the July Lease"), which provided that the lease would commence three business days after the necessary consent and authorizations were received from New Chrysler and the TMVC to conduct business on the premises as a Chrysler franchised dealer. The rent was to be $26,000 per month. Representatives of RMLW-Dodge hoped to receive the necessary approvals within 30 days, but this did not occur.

The state dealer's license for BP Automotive was renewed on May 7, 2009 by RMLW-Dodge, which also received a key to the Waxahachie building. Beginning in mid-July, RMLW-Dodge used the BP Automotive property to repair used vehicles from the adjacent dealerships owned by the RLJ Group, to install a computer system,

3

install a security system, and to store vehicles. The RLJ Group dealerships hired former employees of BP Automotive, paid the utilities on the property, and cut the grass. Expenses incurred by RMLW-Dodge with respect to the property in 2009 were $26,070. Wages and commissions RMLW-Dodge paid to former BP Automotive employees in 2009 totaled $126,759.30.

BPRE filed a voluntary petition under Chapter 11 on November 9, 2009. BPRE then initiated an adversary complaint in the Bankruptcy Court on behalf of itself and BP Automotive, LP d/b/a Bossier Dodge ("BP Automotive"). The named Defendants were RML Waxahachie Dodge, LLC ("RMLW-Dodge"), RML-McLarty-Landers Automotive Holdings, LLC ("RML Holdings"), RML Waxahachie Ford, LLC, ("RMLW-Ford"), RML Waxahachie GMC, LLC ("RMLW-GMC"), and RLJ-McLarty-Landers Automotive Group ("RLJ Group"). In the initial adversary complaint, the Plaintiffs asserted the following causes of action: Count One, breach of contract as to an asset purchase agreement; Count Two, tortious interference with franchise agreements; Count Three, tortious interference with prospective business relations; Count Four, civil conspiracy; Count Five, unfair competition by misappropriation; Count Six, breach of contract of a lease agreement; Count Seven, quantum meruit; Count Eight, trespass to real property; and Count Nine, unjust enrichment. BP Automotive was subsequently dismissed from the proceeding.

BPRE then filed an Amended Adversary Complaint, which made the following changes: Count Two also asserted tortious interference with contractual relation, but altered the language somewhat to allege that the interference with the franchise agreement between BP Automotive and Chrysler caused damages to BPRE; Counts Five, Six, Seven, and Eight were the former Counts Six, Seven, Eight and Nine; Counts Nine and Ten were added, which alleged fraudulent inducement and fraud by nondisclosure. The unfair competition by misappropriation claim was dismissed from the Amended Adversary Complaint.

Bankruptcy Judge Ronald B. King ruled upon the motions for partial summary judgment filed by Defendants RMLW-Dodge, RLJ Holdings, RMLW-Ford, and RMLW-GMC. Judge King ruled that summary judgment was granted as to RMLW-GMC on Counts One and Five in the Amended Adversary Complaint, and that trial would proceed as to the remaining counts. Judge King found that BPRE was not a party to the Asset Purchase Agreement between BP Automotive and RMLW-Dodge, and could only proceed on the document entitled Exhibit 1.4 (iv) lease between BPRE and RMLW-Dodge, which is referred to

4

> as the March Lease. Trial would proceed as to counts Two through Ten in the Amended Adversary Petition as to the claims between BPRE and RMLW-Dodge.
> No party appealed Judge King's findings or conclusions.
> After a non-jury trial, Bankruptcy Judge John C. Akard issued a memorandum of opinion. In that opinion, Judge Akard outlined Plaintiff's claims – those which were contained in the Original Adversary Complaint not the issues in the Amended Adversary Complaint. Judge Akard did not address two claims BPRE added in the Amended Adversary Complaint – fraudulent inducement and fraud by nondisclosure.

*BPRE, LP v. RML Waxahachie Dodge, LLC, et al.*, W-10-CA-267 (W.D.Tex. September 28, 2011), Memorandum Opinion and Order, pp. 2-6.

Appellant did not appeal this Court's opinion in regard to any of the claims presented. As a result, that opinion is *res judicata* of many of the claims Appellant attempts to reargue in this present appeal. The only live issues before the Court relate to the Bankruptcy Court's opinion as to the previously listed fraud claims.

## II. STANDARD OF REVIEW

When reviewing a bankruptcy court decision, the district court utilizes the same standard of review generally applied by a federal court of appeals. Webb v. Reserve Life Ins. Co. (In re Webb), 954 F.2d 1102, 1103-1104 (5th Cir. 1992). The bankruptcy court's factual findings are accepted as true unless clearly erroneous, while conclusions of law are reviewed de novo. In re Foster Mortgage Corp., 68 F.3d 914, 916 (5th Cir. 1995). Mixed questions of law and fact, and questions

5

concerning the application of law to the facts, are also reviewed <u>de novo</u>. <u>In re Bass</u>, 171 F.3d 1016, 1021 (5th Cir. 1999).

## III. DISCUSSION

In his most recent Opinion, Judge Akard finds that BPRE's allegations of fraudulent inducement and fraud by nondisclosure are not supported by the evidence. The record fully supports Judge Akard's opinion.

In its Amended Adversary Complaint, BPRE asserts that RML committed fraudulent inducement by failing to advise BPRE that the dealership was going to include Dodge, Chrysler and Jeeps, rather than merely Dodge and Chrysler vehicles, which would necessarily increase the time required to get approval from Chrysler and the Texas Motor Vehicle Division. BPRE alleges that these "material and false misrepresentation and/or omissions" induced it to enter into the lease with RML. See Amended Adversary Complaint (Adversary Proceeding Document #46). Judge Akard determined that BPRE's allegations were unsupported by the evidence. As he noted, "there is no evidence that RML WD's desire for a Jeep dealership (if in fact it existed in April) prevented the closing of the APA before Chrysler's Bankruptcy." Memorandum of Opinion on Remand, p. 3. BPRE presents nothing in either its briefs or exhibits which countermands Judge Akard's findings.

As to BPRE's claim regarding fraud by nondisclosure, the Amended Adversary Complaint relies upon the same allegations but asserts that RML WD knew the approvals from Chrysler and the TMVD would take much longer than anticipated and

6

failed to inform BPRE prior to entering into the July lease. Judge Akard again determined that there was no evidence in the record supporting BPRE's allegations. RML WD's decision to purchase the assets of Automotive's Chrysler and Dodge business was not a representation that it intended to *only* operate a Chrysler and Dodge dealership. Nor was there any evidence that RML WD was delaying the closing of the Asset Purchase Agreement because of its efforts to receive a Jeep franchise, or that it would take longer to get a Jeep franchise. Nothing presented by BPRE in this appeal is contrary to these findings.

The record also fully supports Judge Gargotta's findings regarding Appellant's Motion to Alter or Amend Judgment. BPRE presented nothing new in its motion; it merely restated the allegations and claims that were previously raised. Accordingly, it is

**ORDERED** that the Judgment of the Bankruptcy Court is **AFFIRMED**.

**SIGNED** this 28 day of November, 2012.

_____
**WALTER S. SMITH, JR.**
**United States District Judge**